IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| THOMAS W., individually and on behalf of his minor child, T.W., <br><br> Plaintiff, <br><br> vs. <br><br> STATE OF HAWAII, DEPARTMENT OF EDUCATION, and KATHRYN MATAYOSHI, in her official capacity as Superintendent of Hawaii Public Schools, <br><br> Defendants. | CIVIL NO. 12-00289 JMS-KSC <br><br> ORDER REMANDING ACTION TO SEEK CLARIFICATION OF ADMINISTRATIVE HEARINGS OFFICER HAUNANI H. ALM'S AUGUST 15, 2011 FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION; ATTACHMENT A |

**ORDER REMANDING ACTION TO SEEK CLARIFICATION OF ADMINISTRATIVE HEARINGS OFFICER HAUNANI H. ALM'S AUGUST 15, 2011 FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION**

**I. INTRODUCTION**

In this action brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2), Plaintiff Thomas W., on behalf of his son, T.W. ("T.W." or "Student") (collectively, "Thomas W."), challenges in part an April 24, 2012 Administrative Hearings Officer's ("AHO") Findings of Fact, Conclusions of Law, and Decision (the "April 2012 Decision"). The April 2012 Decision found that Defendant State of Hawaii, Department of Education

("DOE") denied T.W. a Free Appropriate Public Education ("FAPE") by failing to have a valid Individualized Education Plan ("IEP") in place at the start of the 2011-2012 school year, and failing to have an IEP meeting prior to the start of the 2011-2012 school year to discuss T.W.'s placement.  As for a remedy, the April 2012 Decision determined that Thomas W. was entitled to reimbursement for the portion of T.W.'s private school tuition at Autism Management Services ("AMS") that is directed to services from the Center for Autism and Related Disorders ("CARD") through November 28, 2011, the date of T.W.'s next IEP.  Thomas W. challenges the remedy only, arguing that he is entitled to reimbursement for T.W.'s AMS tuition in its entirety, and that reimbursement should not be limited up until the November 28, 2011 IEP.

Thomas W. further argues that AMS is T.W.'s current educational placement for purposes of stay put in light of an earlier administrative challenge that resulted in an August 15, 2011 Findings of Fact, Conclusions of Law, and Decision (the "August 2011 Decision") by AHO Haunani H. Alm in DOE-SY 1011-109 determining that T.W. was denied a FAPE in 2010-2011 and ordering reimbursement for AMS on the basis that it is an appropriate program for T.W.

At the December 3, 2012 hearing, the parties did not dispute that if the court determines that T.W. is entitled to stay put at AMS, then the substantive

issues raised on appeal become moot. The court therefore defers addressing the substantive issues raised on appeal until stay put is resolved. Based on the following, the court REMANDS the action to seek clarification from AHO Alm as to whether she determined that AMS is T.W.'s current educational placement for purposes of stay put.

## II. BACKGROUND

T.W. is a six-year-old boy who has been diagnosed with an autism spectrum disorder and is eligible to receive special education and related services. AR Ex. 23, Apr. 2012 Dec. ¶ 1.[1] T.W. attended DOE schools up until Fall 2010, when Thomas W. unilaterally placed T.W. in a private school. *Id.* ¶ 2. Starting in April 2011, Thomas W. placed T.W. in his current private school, AMS, which utilizes CARD services. *Id.*

### A. The Prior Decision

The basis for Thomas W.'s assertion that AMS is T.W.'s current educational placement is an administrative decision prior to the April 2012 Decision

---

[1] The record consists of several sets of documents. This Order uses the following abbreviations: (1) "AR" refers to the Administrative Record on Appeal (numbered from 1 to 27); (2) "Pet." refers to Petitioner's Exhibits (numbered from 1 to 14), where "Petitioner" is Thomas W.; (3) "Resp." refers to Respondent's Exhibits (labeled 1 to 21), where "Respondent" is the DOE; (4) "Tr." refers to transcripts of the February 22, 2012 hearing; and (5) "Doc. No." refers to the document numbers in this court's electronic case file.

The court outlines only those facts relevant to the issues that the court must address in resolving this appeal.

-- an August 2011 Decision. *See* Pet. Ex. 8, Aug. 2011 Dec. The August 2011 Decision required the DOE to pay for T.W.'s "education and related expenses at AMS" as a remedy for the DOE's denial of a FAPE. *Id.* at 17.

The basis of the August 2011 Decision is as follows: While T.W. was attending his first private school, Thomas W. contacted the DOE to see what it could offer T.W. *Id.* ¶ 13. In response to this request, Thomas W. was provided incorrect information that T.W. needed to be enrolled in a DOE school before an IEP meeting could take place. *Id.* ¶¶ 17-18. This misinformation ultimately led to a March 21, 2011 due process request and the August 2011 Decision finding that no IEP was in place for several months in 2010 and 2011, which resulted in a loss of educational opportunity for T.W. and denied Thomas W. the opportunity to participate in the IEP formulation process. *Id.* at 15-16.

Although T.W. began attending AMS in April 2011 after the filing of Thomas W.'s due process request, the August 2011 Decision outlined T.W.'s program through CARD and AMS in detail, and detailed T.W.'s progress in the program. *Id.* ¶¶ 43-55. The August 2011 Decision further noted that the DOE Autism Consultant Teacher had conducted a records review of T.W.'s program with CARD and "testified that on paper, Student's CARD program looked good." *Id.* ¶ 57.

Given T.W's placement and progress at AMS, the August 2011 Decision ordered reimbursement for AMS as follows:

> Reimbursement
> In *Burlington, MA v. Department of Education, et al.*, 105 S. Ct. 1996 (U.S. 1985), the U.S. Supreme Court held that parents may be awarded reimbursement for costs associated with the unilateral placement if it is found that:
> 1. The school district's IEP is not appropriate; and
> 2. The parents' placement is appropriate.
>
> *See also*, *Seattle School District v. B.S.*, 82 F.3d 1493, 1500 (9th Cir. 1996).
> With regard to Petitioners' requested remedy, the Hearings Officer finds that:
> (1) Student was eligible for special education and related services from the DOE after he was withdrawn from the DOE on September 8, 2010. Father's intentions to seek an IEP meeting for Student in Fall 2010 were evident to the SPED Pre-School Teacher, Student's IEP Care Coordinator. Father's requests to conduct an IEP for Student were thwarted when Father received incorrect information from the SPED Pre-School Teacher regarding conducting an IEP meeting for Student. Therefore, Student was denied a FAPE; and
> (2) AMS is an appropriate program for Student. The Hearings Officer finds by a preponderance of the credible evidence that Student's AMS program is appropriate for his individual needs and is being implemented with fidelity.

*Id.* at 16-17. The August 2011 Decision therefore ordered that the DOE "shall reimburse Petitioners and/or in the alternative, pay for Student's education and related expenses at AMS." *Id.* at 17.

**B.     The April 2012 Decision and the Current Challenge**

While the parties were proceeding through the administrative process regarding Thomas W.'s March 21, 2011 due process request, the parties had an IEP meeting on April 11, 2011, *see* AR Ex. 23, Apr. 2012 Dec. ¶ 3, which became the subject of another due process request, the April 2012 Decision, and the current challenge.

Relevant to this appeal, Thomas W. asserted that the April 11, 2011 IEP was insufficient because, among other things:

> 1.     The DOE failed to convene an IEP meeting prior to the start of the 2011-2012 school year to discuss T.W.'s placement as stated in the IEP and corresponding Prior Written Notice; and
> 2.     The term "close adult supervision" in the IEP was not appropriate since T.W. required one-to-one supervision, and the term "daily" to describe the supervision was too vague.

*Id.* at 9.  As a remedy, Thomas W. sought reimbursement for T.W.'s tuition at AMS.

AHO Richard A. Young ("AHO Young") held an evidentiary hearing on February 22, 2012.  At the February 22, 2012 hearing, AHO Young inquired as to T.W.'s current private placement, and Thomas W.'s counsel confirmed that AMS was the stay put placement:

> Hearing Officer Young: All right.  Is there -- Mr. Peck, let

>me first ask you: Is there a current private placement in
>this case?
>Mr. Peck: Yes. It's Autism Management Services. It's
>his Stay Put placement 'cause that's the one he was when
>he prevailed in the previous hearing.

Tr. at 5. Defendant did not object to this representation and indeed paid for AMS pursuant to stay put until the April 2012 Decision.

The April 2012 Decision found that Thomas W. established a denial of FAPE on the issues outlined above, but did not award the full extent of the remedy requested. Specifically, the April 2012 Decision found that while "the CARD program is, and continues to be, an appropriate program for Student," Thomas W. did not establish that AMS is an appropriate placement. AR Ex. 23, Apr. 2012 Dec. at 15-18. The April 2012 Decision reasoned that AMS is not a proper placement because (1) the interim director of AMS is not qualified to teach and/or direct instructors to teach students with autism because she is not a teacher, has no training in psychology, and lacks experience directing a placement for students with autism; (2) the instructors appear to have no teaching degrees or training in special education students; and (3) AMS is not an accredited school. *Id.* at 17-18. The April 2012 Decision therefore ordered:

>That based upon the denials of FAPE, Petitioners are
>awarded reimbursement for Student's CARD program
>from when he started at the CARD program (in July or
>August 2011) to November 28, 2011, the date of

> Student's next IEP.  As Respondent argues in its closing brief, the November 28, 2011 IEP has not been challenged or deemed inappropriate.

*Id.* at 19.

On May 23, 2012, Thomas W. filed this action seeking review of the April 2012 Decision.  Thomas W. filed his Opening Brief on October 5, 2012.  Doc. No. 15.  The DOE filed its Answering Brief on November 5, 2012, Doc. No. 16, and Thomas W. filed no Reply.  A hearing was held on December 3, 2012.  The parties provided supplemental briefing on December 12, 2012.

### III.  DISCUSSION

Thomas W.'s substantive arguments on appeal are moot if the court ultimately determines that AMS is the current educational placement for purposes of stay put.  The court will therefore first determine the issue of stay put.  Based on the following, the court remands this action to seek clarification as to whether the August 2011 Decision determined that AMS is Thomas W.'s current education placement for purposes of stay put.

**A.    Relevant Stay Put Principles**

> The IDEA provides, in pertinent part, that:
>
> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational

> placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j); *see also* 34 C.F.R. § 300.518(a).[2]

"[C]ommonly referred to as the 'stay put' provision, [§ 1415(j)] requires the educational agency to maintain a disabled child's educational program until any placement dispute between the agency and the child's parents is resolved." *Johnson v. Special Educ. Hearing Office, State of Cal.*, 287 F.3d 1176, 1179 (9th Cir. 2002). Under this provision, "the school district and the state are responsible for the costs of [a student's] placement during the court review proceedings regardless of which party prevails in this appeal." *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d 635, 641 (9th Cir. 1990). Upon entry of a stay put order, a school district is obligated to pay the cost of the student's current educational placement pending the resolution of the judicial proceedings. *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1040 (9th Cir. 2009).

Although the IDEA does not define the phrase "then-current

---

[2] Section 300.518(a) provides:

(a) Except as provided in § 300.533, during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under § 300.507, unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement.

educational placement," "[c]ourts have generally interpreted the phrase to mean the placement set forth in the child's last implemented IEP."  *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 911 (9th Cir. 2009) (citing *Johnson v. Special Educ. Hearing Office*, 287 F.3d 1176, 1180 (9th Cir. 2002); *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir. 1990); *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996)).

Alternatively, the "then-current educational placement" may be implied by law where an administrative or judicial decision finds that the parent's choice of placement is appropriate.  As explained in *Clovis*, the Supreme Court in *School Committee of the Town of Burlington v. Massachusetts Department of Education*, 471 U.S. 359 (1985), outlined when this situation occurs:

> The Supreme Court [in *Burlington*] considered a situation, like this one, in which parents had unilaterally changed a placement, but had received a state administrative agency decision in favor of their choice.  The Supreme Court there said that the agency's decision in the parents' favor "would seem to constitute an agreement by the State to the change of placement."  The Court refused to give the stay put provisions a reading that would force parents to leave a child in what they feel may be an inappropriate educational placement, or act at their peril in keeping a child in their chosen placement, after a successful administrative ruling.  [*Burlington*, 471 U.S. at 372-73].  The Court took the view that once the State educational agency decided that the parents' placement was the appropriate placement, it became the "then current educational placement" within the meaning of section

> 1415(e)(3). *Burlington* concluded that the school was required to maintain that placement pending the court review proceedings pursuant to section 1415.

*Clovis*, 903 F.2d at 641. Thus, "[w]here a parent unilaterally changes the placement of a child, but a subsequent administrative or judicial decision confirms that the parental placement is appropriate, the decision 'constitute[s] an agreement by the State to the change of placement' and the placement becomes the 'current educational placement' for the purposes of the stay put provision." *K.D. ex rel. C.L. v. Dep't of Educ., Hawaii*, 665 F.3d 1110, 1118 (9th Cir. 2011) (quoting *Clovis*, 903 F.2d at 641); *see also Capistrano*, 556 F.3d at 912 (citing *Clovis*, 903 F.2d at 641).

With that said, "[h]owever, such a favorable decision for a parent must *expressly* find that the private placement was appropriate." *K.D.*, 665 F.3d at 1118 (citing *Capistrano*, 556 F.3d at 903-04) (emphasis added)). *Capistrano* outlines the following examples of express determinations:

> In [*Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 supplemented sub nom. *Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 Fed. Appx. 89 (2d Cir. 2004),] a State Review Officer ("SRO") considered the two plans, found the public placement inappropriate, and concluded the student's needs were met at the private school the parents had chosen. 386 F.3d at 162. In *Clovis*, the administrative hearing officer explicitly found the private hospital placement was appropriate. 903 F.2d. at 639. In [*Board of Education v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002),] the hearing officer made a

> "determination that the services selected by the parents were appropriate." 290 F.3d at 484-85.

556 F.3d at 912. *Capistrano* distinguished its facts from these cases and denied stay put because the district court never "adjudicat[ed] the appropriateness of [the student's] private placement." *Id.* Instead, in *Capistrano* the district court only determined reimbursement and "reiterated that it had not ruled on the merits of [student's] placement." *Id.*; *see also Huerta v. S.F. Unified Sch. Dist.*, 2011 WL 5521742, at *6 (N.D. Cal. Nov. 14, 2011) (finding that order for reimbursement determining that private placement was appropriate made "no finding as to the appropriate prospective placement for Sebastian" and the ALJ expressly stated that the order could not be used for purposes of stay put). As a result, language in the district court's opinion indicating that the private services "were appropriate, under the circumstances" was directed to the fact that the student had received "some educational benefit" for reimbursement pursuant to 20 U.S.C. § 1412(a)(10)(c) and had "no bearing" on stay put pursuant to § 1415(j). 556 F.3d at 912 n.9. *Capistrano* therefore concluded that "[u]nless the district court or agency actually reaches the merits of the appropriate placement, we will not imply a 'current educational placement' for purposes of § 1415(j)." *Id.* at 913.

///

///

### B.  Application and Issue for Remand

Thomas W. unilaterally placed T.W. at AMS.  As a result, he is not entitled to stay put unless the August 2011 Decision determined that AMS is appropriate and thus his current educational placement.  On the existing record, this presents a close question -- although the August 2011 Decision expressly held that "Student's AMS program is *appropriate* for his individual needs and is being implemented with fidelity," Pet. Ex. 8, Aug. 2011 Dec. at 17 (emphasis added), a question remains whether this finding should be interpreted to mean that the August 2011 Decision determined that AMS is appropriate for purposes of reimbursement only pursuant to § 1412(a)(10)(C) (as the DOE argues), or that the August 2011 Decision more broadly determined that AMS is appropriate for T.W. and therefore his current educational placement for purposes of stay put pursuant to § 1415(j) (as Thomas W. argues).

On the one hand, the August 2011 Decision does not mention "stay put," "current educational placement," or "§ 1415(j)," and it discussed the appropriateness of AMS under the heading "reimbursement."  On the other hand, there is no language within the August 2011 Decision specifically limiting its determination to reimbursement pursuant to § 1412(a)(10)(C), and it applied a legal framework derived from *Burlington* and *Seattle School* to find that AMS "is

appropriate for [T.W.'s] individual needs and is being implemented with fidelity." *See* Pet. Ex. 8, Aug. 2011 Dec. at 16 (citing *Burlington* and *Seattle School* for the principle that "reimbursement for costs associated with the unilateral placement if it is found that (1) the school district's IEP is not appropriate; and (2) The parents' placement is appropriate"). As described above, *Burlington* is widely cited for determining stay put because it reasoned that an administrative decision in favor of the parents' placement "would seem to constitute agreement by the State to the change of placement." 471 U.S. at 372. And the citation to *Seattle School* provides the definition of "appropriate" as used in the IDEA's assurance that all disabled children receive a FAPE. 82 F.3d at 1500.

    Thus, it appears that even though the April 2011 Decision was addressing the specific issue of "reimbursement," it may have applied a framework directed to determining appropriateness of the current educational placement (and therefore stay put). Indeed, the April 2011 Decision outlined T.W.'s program at AMS in detail and noted that the DOE Autism Consultant Teacher had conducted a records review of T.W.'s program with CARD and "testified that on paper, Student's CARD program looked good." Pet. Ex. 8, Aug. 2011 Dec. ¶ 57.

    The court believes that remanding this action for the limited purpose of seeking clarification is in the interest of justice. Indeed, very similar circumstances

were presented in *Dep't of Educ., Hawaii v. C.B.*, 2012 WL 1081073 (D. Haw. Mar. 29, 2012), where Chief Judge Susan Oki Mollway remanded the action to AHO Alm to seek clarification whether she intended her reimbursement determination to apply for purposes of stay put. And although the August 2011 Decision is not the direct administrative decision from which Thomas W. appeals, this court has "broad discretion" in determining appropriate relief under IDEA, *see Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1084 (9th Cir. 2008), and the DOE acknowledges that it is "not aware of any legal authority that prohibits this Honorable Court from seeking such clarification." Doc. No. 18, Resp. Suppl. Br. at 8.

In opposition to remand, the DOE argues that there is no basis from which the court could imply that the August 2011 Decision reached the merits of stay put because there is no "detailed evaluation explaining the reasons why AMS is the proper educational institution for Student." *See* Doc. No. 18, Resp. Suppl. Br. at 8. Contrary to the DOE's argument, the August 2011 Decision discussed at length the services that T.W. receives at AMS and ultimately concluded that "Student's AMS program is appropriate for his individual needs and is being implemented with fidelity." *See* Pet. Ex. 8, Aug. 2011 Dec. at 17. It is for this very reason that the court seeks clarification from AHO Alm whether she intended these findings to apply to the issue of current educational placement for purposes of stay put.

The DOE further argues that "it would be unfair to permit AHO Alm to now amend her August 2011 Decision, in a completely separate appeal from a different hearing decision, since it is now too late for either party to appeal the August 11, 2011 Decision." Doc. No. 18, Resp. Suppl. Opp'n at 9. Although a remand under these circumstances may be unusual, the DOE's assertions of unfairness ring hollow -- after the August 2011 Decision, the DOE agreed with Thomas W. that AMS was T.W.'s current educational placement and paid for AMS until the April 2012 Decision. In other words, it is only now in this appeal that the DOE has made an about-face and argues that AMS is not T.W.'s current educational placement. Under these circumstances, there is no unfairness to the DOE for the court to seek clarification from AHO Alm.

Finally, the DOE argues that if the court does seek clarification from AHO Alm, the court should require her to support any finding that AMS is T.W.'s current educational placement with specific findings that support such determination. *Id*. The court rejects this suggestion -- as explained above, AHO Alm already made relevant determinations, and the only question the court requires clarification of is whether AHO Alm intended these findings to mean that AMS was T.W.'s current educational placement for purposes of stay put as well as for retrospective reimbursement.

The court therefore remands this case for the limited purpose of having AHO Alm clarify what she intended on page 17 of her August 2011 Decision in her statement that "Student's AMS program is appropriate for his individual needs and is being implemented with fidelity." If AHO Alm intended to find that AMS is T.W.'s current educational placement, the stay put provision requires the DOE to pay T.W.'s fees at AMS pursuant to stay put. On the other hand, if AHO Alm did not intend to find that AMS is T.W.'s current educational placement, then the stay put provision will not require the DOE to pay for T.W.'s placement there during the pendency of any appeal.

As in *C.B.*, the court does not request any lengthy response from AHO Alm on the clarification requested here. See *C.B.*, 2012 WL 1081073, at *7. Rather, the court requests a short indication of whether AHO Alm recalls whether she meant to conclude that AMS was T.W.'s "current educational placement," thus entitling T.W. under § 1415(j) to attend AMS at the expense of the DOE throughout these legal proceedings.

### IV. <u>CONCLUSION</u>

Based on the above, the court REMANDS this action, seeking clarification from AHO Alm as to whether she intended in her August 15, 2011 Findings of Fact, Conclusions of Law, and Decision to find that AMS is T.W.'s

current educational placement for purposes of stay put.  For AHO Alm's convenience, the court has attached a form for her use in responding.  AHO Alm is also free to provide a written response without using the attached form.

By December 28, 2012, the parties provide to AHO Alm the following:

1. AHO Alm's August 15, 2011 Findings of Fact, Conclusions of Law, and Decision;

2. a copy of this Order; and

3. the Remand Form attached to this Order as Attachment "A".

At AHO Alm's request, the parties shall provide her any additional documents from the administrative record or transcripts in DOE-SY 1011-109.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 19, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Thomas W. v. State of Hawaii et al.*, Civ. No. 12-00289 JMS-KSC, Order Remanding Action to Seek Clarification of Administrative Hearings Officer Haunani H. Alm's August 15, 2011 Findings of Fact, Conclusions of Law and Decision; Attachment A

ATTACHMENT A

*Thomas W. v. State of Hawaii et al.*, Civ. No. 12-00289 JMS-KSC, AHO Remand Form

In stating that "Student's AMS program is appropriate for his individual needs and is being implemented with fidelity" and ordering "reimbursement" on page 17 of the August 15, 2011 Findings of Fact, Conclusions of Law, and Decision, I intended the following:

_____1.  To indicate that, because I found that AMS was an appropriate educational placement for T.W., AMS became T.W.'s "current educational placement" for purposes of stay put pursuant to 20 U.S.C. § 1415(j).

_____ 2. To indicate that T.W. and his parents are entitled to have the DOE reimburse them (or pay AMS directly) for T.W.'s attendance at AMS for a designated period under 20 U.S.C. § 1412(a)(10)(c).

_____ 3. Both 1. and 2.

_____4.  I do not recall.

_____5.  Other (please explain, and use additional sheet if necessary).

_____

_____

_____

_____

DATED: _____

SIGNED: _____
HAUNANI H. ALM
Administrative Hearings Officer
Department of Commerce and Consumer Affairs